**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EVELYN N., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CV-246-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** for further proceedings.

**I.   Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178 (quoting *Knight*, 756 F.3d at 1175).

## II.   Procedural History

Plaintiff filed an application for social security disability benefits under Title II and Title XVI of the Social Security Act (Act), respectively, on December 14, 2017 and February 14, 2018. Plaintiff alleged an onset date of December 22, 2016, which was later amended to March 26, 2018. (R. 243). Plaintiff initially alleged that she became disabled due to post-traumatic stress disorder (PTSD), anxiety, depression, and injuries to the left

2

shoulder and elbow. (R. 63-64). However, later in the application process, Plaintiff alleged that she is unable to work due to problems with her neck, her left shoulder, and obesity. (*See* R. 38-39). Plaintiff was 34 years old on her amended alleged onset date. Plaintiff had previously worked as a cashier, medical assistant, front desk clerk, customer service representative, packing department trainer, and salesperson. (R. 41, 75).

The Commissioner denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on July 24, 2019. Testimony was given by the Plaintiff and a Vocational Expert (VE). On August 19, 2019, the ALJ issued a decision denying disability benefits. (R. 10). The Appeals Council affirmed the decision on April 16, 2020. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's August 19, 2019 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of March 26,

3

2018. (R. 15). The ALJ's determination at step one is not challenged and is supported by substantial evidence.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. A claimant who does not have a severe impairment is not disabled. *See Williams*, 844 F.2d at 751. Here, the ALJ determined that Plaintiff has severe impairments of degenerative disc disease, status post lumbar surgery, tendinitis of the left shoulder, obesity, depression, anxiety, and PTSD. (R. 16). Thus, the ALJ properly proceeded to step three.

At step three, the ALJ determines whether the claimant's severe impairment or impairments are equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is presumed to be disabled and is entitled to benefits. Otherwise, the ALJ proceeds to step four.

Here, the ALJ found at step three that Plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing. In reaching this conclusion, the ALJ considered the Listings under Sections 1.00 (Musculoskeletal system) and 12.00 (Mental disorders), as well as the criteria set forth in Social Security Ruling (SSR) 19-2p regarding obesity. Id. With respect to Plaintiff's mental impairments, the ALJ addressed the "paragraph B" criteria—the four areas of mental functioning listed in the agency's psychiatric review technique (PRT). *See* 20 C.F.R., Pt. 404, Subpart P, app. 1. The ALJ

4

found that Plaintiff has a mild limitation in understanding, remembering, or applying information; and a moderate limitation in each of three other areas of functioning: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* Because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the paragraph B criteria are not satisfied. (R. 16).

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. If the claimant can perform her previous work, she is not disabled. Step four includes three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional limitations. [Plaintiff] should never climb things such as ladders or scaffolds. She should only occasionally stoop. She should not perform work above her shoulder level. She is able to perform simple, repetitive tasks and should only occasionally interact with supervisors and co-workers. She should not work with the public.

(R. 18). Citing the VE's hearing testimony in response to a hypothetical reflecting these limitations, the ALJ found that Plaintiff cannot return to her past relevant work. (R. 24-25). Accordingly, the ALJ proceeded to step five.

If the claimant satisfies her burden at steps one through four—thus establishing a prima facie case of disability – "the burden of proof shifts to the Commissioner at step five to show that the claimant retains [the functional residual capacity] to perform [other] work available in the national economy, given the claimant's age, education, and work experience." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

Here, citing the VE's hearing testimony, the ALJ determined that Plaintiff can perform the requirements of the following "representative occupations":

- *Clerical Mailer*, DOT # 209.587-010: sedentary; specific vocational preparation (SVP) level 2; unskilled; with 20,000 jobs estimated nationally;
- *Touch-up Screener*, DOT # 726.684-010: sedentary; SVP level 2; unskilled; with 24,000 jobs estimated nationally; and
- *Suture Winder*, DOT # 712.687-034: sedentary; SVP level 2; with 10,000 jobs estimated nationally.

(R. 26). The ALJ also found that these jobs exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff not disabled at step five. *Id*.

## IV. Discussion

### A. Plaintiff's Arguments

Plaintiff argues that the ALJ ignored both subjective statements of pain and objective medical evidence of limitations arising from impairments involving Plaintiff's

neck and upper extremities. Plaintiff contends that the evidence supports additional limitations in reaching and in moving or bending her head, which leave her unable to perform the jobs the ALJ identified at step five.

**B.    Legal Standard**

In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit outlined a framework for evaluating a disability claim based on pain. *See* 834 F.2d at 163 (citation omitted). The *Luna* framework requires the ALJ to consider "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163-64)).

Similarly, under the Commissioner's regulations, the agency first considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once [such] impairment(s) . . . is established, [the agency] evaluate[s]

the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *See id.*[2]

In conducting the analysis of the intensity and persistence of a claimant's pain, the agency will consider objective medical evidence and will also "carefully consider any other information [claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). The agency's regulations further explain:

> We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

---

[2] While the agency describes the analysis as involving a two-step process rather than the three considerations described in *Luna* and *Keyes-Zachary*, the regulatory policy generally comports with the approach as outlined in the cases. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016).

20 C.F.R. § 404.1529(c); *see also Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F2d. 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed); *see also Keyes-Zachary,* 695 F.3d at 1167. While a formalistic factor-by-factor recitation of the evidence is not required, the ALJ must set forth the specific evidence he relies on in evaluating a claimant's subjective symptoms, and must give specific reasons for his findings that are closely linked to substantial evidence. *See White v. Massanari,* 271 F3d. 1256, 1261 (10th Cir. 2001); *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir. 1995).

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.,* 602 F.3d at 1144 (citing *Kepler,* 68 F.3d at 391) (internal citations and quote marks omitted).[3]

---

[3] The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Commissioner*, __ F. App'x __, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

### C.     Analysis

#### 1.     Looking Down or Side-to-Side

As the ALJ noted, Plaintiff testified that she has "trouble looking right and left, which makes it difficult to drive," and that "[l]ooking down also hurts." (R. 19). However, the RFC determination included no limitation as to looking down or from side to side. Plaintiff contends that the ALJ failed to properly consider her statements and medical evidence concerning limitations in looking down or from side-to-side. Plaintiff argues that the error requires reversal because the alternative work identified at step five would be eliminated for an individual with her limitations.

Because the Plaintiff had medically determinable impairments that could reasonably be expected to cause her pain, the ALJ was required at the next step to "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529; *see Luna*, 834 F.2d at 163-64 (last step is to determine, upon consideration of all of the evidence, whether claimant's pain is disabling); *Keyes-Zachary*, 695 F.3d at 1166-67. An ALJ must provide "specific reasons for the weight given to the individual's symptoms" in the decision. SSR 16-3p. The ALJ's findings must "be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.

Upon questioning by Plaintiff's counsel during the hearing, the VE testified that the occupations identified in response to the operative hypothetical "are desk based jobs. So,

the person . . . would be required to look down, . . . toward [their] hands or a work surface, for more than two hours per day." (R. 56). Moreover, to perform unskilled jobs of the type consistent with Plaintiff's RFC, an individual would need to look down "all day long[;] at least at the frequent range." *Id*. The VE confirmed that these jobs are eliminated for a hypothetical individual who can only look right, left, and down for two hours, at most, in an eight-hour work day. (R. 56).

Here, the ALJ related Plaintiff's statements in his decision, but did not explain how he considered her allegations as to pain when looking down or side-to-side. (R. 19). After noting Plaintiff's testimony and medical evidence in the record, the ALJ's decision said nothing further about her alleged pain with looking down, left, or right. However, the record includes objective medical evidence that is consistent with the alleged additional functional limitations. For example:

    (1) on March 5, 2018, Plaintiff reported pain at her neck, shoulder, and lower back, rating the pain as 7 to 8; and stated that she was unable to brush her hair;

    (2) on March 26, 2018, Plaintiff reported that her neck pain had been aggravated by recent injuries from domestic violence. Steven Hardage, M.D. observed limited range of motion in the cervical spine and severe pain with radiation down her left arm when turning to the left; diagnosed strain of neck muscle, left cervical radiculopathy, and cervical spine pain, and recommended MRI imaging of Plaintiff's cervical spine;

    (3) on May 7, 2018, Plaintiff reported pain in her left shoulder and elbow, and in her cervical and lumbar spine, and reported a previous fusion with hardware at

>L4-L5 and L5-S1, which improved but did not completely resolve her pain. General surgeon Ladd Atkins, D.O observed a reduced range of motion due to pain in flexion of her cervical spine and lumbar spine, and tenderness to palpation in the cervical, thoracic, and lumbar paraspinal areas. Dr. Atkins assessed, inter alia, multi-level cervical spondylosis, cervicalgia, headaches, and post-laminectomy of L4-L5 and L5-S1; and
>
> (4) on May 8, 2018, another provider observed a limited range of motion in Plaintiff's low back, cervical spine, and left shoulder.

(*See* R. 19-21).

Additionally, at the reconsideration level, Plaintiff submitted recent records concerning alleged multi-level cervical spondylosis, resulting in varying degrees of canal and foraminal stenosis; diffuse straightening of the cervical spine; bilateral facet arthrosis; focal mass-like thickening of the oropharynx; and bilateral enlarged lymph nodes. (R. 127). On May 9, 2019, Plaintiff reported that her neck pain was caused by several serious motor vehicle accidents as well as history of domestic violence. Kris Parchuri, D.O. observed mild to moderate bilateral facet arthrosis, no significant central canal stenosis, but left foraminal stenosis at C3-C4 and C5-C6, and multilevel cervical spondylosis, pain with side-to-side motion, and paraspinal musculature tightness. (*See* R. 20-22).

The ALJ recited some of this evidence, but concluded that "the nature, scope, and findings from medical records are not supportive of the intensity or persistence of [Plaintiff's] subjective allegations . . . [or] of more restrictive findings than adopted." (R. 24). The ALJ also noted that "[s]tatements made by the examining sources, as well as

findings made by the State agency reviewers[,] are not reflective of the limitations more restrictive than adopted." *Id*. The ALJ cited the opinion of reviewing physician James Metcalf, M.D., who, at the reconsideration level, "determined that [Plaintiff] alleged the new condition of multi-level cervical spondylosis, but [that] a review of the medical evidence of record did not substantia[te] a more restricted determination" than the initial determination for light work with postural limitations. (R. 24).

However, it is not clear whether any medical sources considered or made findings on *all* potential functional limitations of Plaintiff's neck impairment with respect to a sedentary job that would require an individual to look down "all day long[, a]t least in the frequent range." (R. 56). The standard forms completed by state agency reviewing experts inquire about certain postural functions but do not inquire about limitations looking down or from side-to-side. (*See* R. 125-126).

In his decision, the ALJ did not explain how he weighed Plaintiff's hearing testimony regarding limitations in looking down or from side to side. The ALJ failed to address these statements in relation to the objective medical evidence or the appropriate factors. As a result, the Court cannot determine whether the ALJ accounted for these statements in the RFC or rejected Plaintiff's statements regarding her pain altogether. Where, as here, an ALJ does not identify and discuss the evidence upon which he relies, the Court cannot meaningfully review the ALJ's determination. *Clifton v. Chater,* 79 F.3d at 1009 (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's

conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful review"); *see also* SSR 16-3p. Accordingly, this error requires reversal and remand.

### 2. Reaching

Plaintiff also argues that her left shoulder impairment requires additional limitations in reaching. The vocational expert testified that if reaching was limited to two hours with the left arm then no sedentary jobs would be available. (R. 55). While the RFC determination excludes work "above shoulder level," the ALJ's decision did not address Plaintiff's alleged limitations in reaching in other directions—for example, Plaintiff's hearing testimony that reaching at shoulder length is painful, although not as painful as reaching overhead (R. 43-44) and other statements in the record supporting her alleged reaching limitations. (*See, e.g.*, R. 1425, 1427). Rather, the ALJ's explanation is limited to a few conclusory statements referring generally to Plaintiff's alleged limitations, but not identifying any specific limitations. (*See* R. 24).

In the absence of an explanation in the ALJ's decision, the Court cannot review whether the ALJ applied the proper legal standards in his RFC determination. The VE testified that the jobs identified as consistent with the operative hypothetical would be eliminated for an individual who is limited to two hours per day of reaching in front or to the sides. (R. 55). Thus, this error also requires remand for further consideration or explanation.

### V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not supported by substantial evidence, and the ALJ failed to apply proper legal standards established by

14

the Commissioner and the courts. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

    ORDERED this 7th day of September, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge